A prima facie showing of right to writ of prohibition is shown
where petitioners therefor show that main questions raised in
proceedings before tribunal against which writ is to be di-
rected had previously become *res judicata* and that other
claims have no merit in either law or fact as shown by the
records before the court.

2. COURTS—JURISDICTION—RES JUDICATA.

Since litigation must come to an end, a litigant who had had a
chancery case removed from the State court to the Federal
district court and had prosecuted two appeals to a con-
clusion adverse to her in both the circuit court of appeals and
supreme court of the United States may not begin anew
in State chancery court from which litigation had been re-
moved and have former judgments held for naught, successful
parties enjoined from taking action thereunder, and the main
issues retried.

3. MANDAMUS—ANCILLARY TO PROHIBITION—LEAVE TO APPEAL—
FORM—COURT RULES.

Plaintiff was not barred from issuance of writ of mandamus,
sought as ancillary to writ of prohibition, because proper leave
to appeal in the nature of mandamus was not first obtained ·
nor application made therefor in proper form under court rule,
where such objection was not made in answer (Court Rule No.
60 [1933], as amended).

4. EQUITY—JURISDICTION—MULTIPLICITY OF SUITS—CONSTRUCTION
OF WILL.

The traditional aim of a court of equity to settle all disputed
questions in one suit gave it jurisdiction to construe will gov-
erning distribution of a large estate wherein there was uncer-
tainty as to the will and description and nature of the assets,

---

Valid and final personal judgment rendered on merits in favor of
defendant bars plaintiff from thereafter maintaining action on
original cause of action, see Restatement, Judgments, § 48; nor may
plaintiff maintain such action ·if judgment is rendered in favor of
defendant after trial on an issue of fact if issue was on the merits,
see Restatement, Judgments, § 52.

Subject to general equitable considerations, relief from valid judg-
ment will be granted party to action injured thereby if in the ac-
tion he had no reasonable opportunity for impartial determination
on meritorious claim or defense which he had. See Restatement,
Judgments, § 118.

accountings to be had thereunder by trustee and settlement
of various disputed questions between new parties brought in
by cross bill in addition to the trustee.

5. SAME—JURISDICTION—CONSTRUCTION OF WILL.
   Equity has inherent jurisdiction over the construction of a will,
   especially where there is any uncertainty over the payment
   of money under a legacy.

6. COURTS—CONCURRENT JURISDICTION AS TO TESTAMENTARY TRUS-
   TEES.
   Prior to the enactment of the probate code, the circuit court
   had concurrent jurisdiction with the probate court over testa-
   mentary trustees (3 Comp. Laws 1929, §§ 15519, 15905; Act
   No. 288, Pub. Acts 1939).

7. PROHIBITION — QUESTIONS REVIEWABLE — STATUTES — SAVING
   CLAUSE.
   In view of clause incorporated in probate code saving rights
   accrued or accruing prior to its enactment, the effect of such
   code upon judgments rendered before the code became ef-
   fective is not considered in determining right of successful
   litigants thereunder to writ of prohibition and ancillary writ
   of mandamus (Act No. 288, chap. 13, § 5, Pub. Acts 1939).

8. SAME—QUESTIONS REVIEWABLE—RES JUDICATA—JURISDICTION.
   Discussion of applicable doctrine of *res judicata*, invoked by
   plaintiffs seeking writ of prohibition and ancillary writ of
   mandamus to restrain further action by circuit judge in new
   chancery case commenced by unsuccessful litigant in previous
   chancery case, which she had caused to be removed to Federal
   court because of diversity of citizenship and which involved
   additional parties and various decrees and appeals deciding
   the main questions sought to be retried, is unnecessary where
   the State court in the first suit did have jurisdiction.

9. SAME—FRAUD—EVIDENCE.
   Charge of fraud by litigant who had been affected adversely
   by decree finally rendered after protracted litigation initiated
   by testamentary trustee which had sought construction of
   will *held*, unfounded upon consideration of amended bill of
   complaint, an interlocutory order, findings of district judge
   and judgments rendered even after attention of United States
   court of appeals had been called to erroneous statement by
   attorneys relative to losses sustained by trustee, which exhibits
   were incorporated in record on petition for writ of prohibition

and ancillary writ of mandamus against further consideration by circuit judge of new suit commenced by defeated litigant to retry main issues formerly adjudicated.

10. FRAUD—BRIEFS.

Charge of connivance on part of a trust company which had represented one of several litigants involved in suit to construe a will, with the testamentary trustee, because such trust company had filed a brief in the supreme court of the United States, was without basis as connivance usually denotes silence or secrecy while filing such a brief does not.

11. JUDGMENT—PARTIES—CHARITABLE TRUSTS—ESTOPPEL.

Plaintiff in new suit in chancery against the further consideration of which by circuit judge petitioners sought to obtain writ of prohibition and ancillary writ of mandamus may not now contend that judgments rendered in a previous suit in which a charitable trust received a substantial share of the large estate involved were void and of no effect because such trust had not been represented by the prosecuting attorney and the attorney general as such complaint is untimely and comes too late, even if of any merit, after she had filed a cross bill in such first suit and impleaded various parties but no public officials.

12. WAIVER—JUDGMENT—TRUSTEE'S ACCOUNT.

A testamentary trustee by filing an annual account of its trust in which it was stated that the assets thereof were held subject to the terms of a final judgment by its terms providing for approval of disbursements under the trust did not waive rights under such judgment.

13. JUDGMENT—UNITED STATES COURTS—PARTS—TRUSTS—BURDEN OF PROOF.

Judgments of Federal court to which chancery suit for construction of trust provisions of a will had been removed because of diversity of citizenship and in which it was adjudicated that the trustee had met its burden of proving the correctness of its account including large sums for costs and expenses are final and binding upon the parties thereto.

14. PROHIBITION—MANDAMUS—PLEADING—DEFAULT.

Fact that corporate trustee had filed an answer in a suit by a beneficiary under the trust in order to prevent a default being taken against it did not preclude filing of petition for writ of

prohibition and ancillary writ of mandamus to bar further
consideration of such case by the trial judge and compel dis-
missal of the bill because the main issues had previously been
duly adjudicated in another suit.

Petition for writ of prohibition and ancillary writ
of mandamus by Second National Bank & Trust
Company of Saginaw, individually and as trustee
under the will of Arthur D. Eddy, and by Charlotte
Eddy Morgan to restrain Neil E. Reid, presiding
Saginaw Circuit Judge, from further proceeding in
a suit brought to enjoin parties from proceeding
under a judgment of a Federal court and to compel
him to dismiss such suit. Submitted October 13,
1942. (Calendar No. 42,067.) Writ issued Febru-
ary 23, 1943. Rehearing denied April 6, 1943. Ap-
plication for certiorari to Supreme Court of Michi-
gan filed in Supreme Court of the United States
July 14, 1943, denied October 11, 1943.

*Thomas G. Long* and *William C. O'Keefe* (*But-
zel, Eaman, Long, Gust & Bills, Frank A. Rockwith,*
and *George R. Effler,* of counsel), for plaintiffs.

*William Alfred Lucking* (*Prentiss M. Brown,* of
counsel), for defendant.

WIEST, J. Arthur D. Eddy, an old resident of
Saginaw, Michigan, died testate in 1925. The prin-
cipal asset of his very large estate consisted of the
entire capital stock of C. K. Eddy & Sons, a holding
company owning stocks, bonds, real estate, *et cetera.*
Although its capital was only $125,000, represented
by 12,500 shares of a par value of $10 each, its capi-
tal and surplus amounted to at least $3,600,000 at
the time of Mr. Eddy's death. In his will, he di-
rected his executors to take all necessary legal steps
to declare cash dividends with which to pay debts,
taxes, expenses of administration, and cash legacies,
*et cetera,* and after their payment, he bequeathed

certificates representing one third of the capital
stock to Charlotte H. Eddy, his wife (now Char-
lotte Eddy Morgan), those representing another
one third to the trustees under paragraph 9 of the
will, and those representing the remaining one third
to the trustees under paragraph 10 of the will. The
Second National Bank of Saginaw and George L.
Humphrey were appointed trustees of the trusts
respectively created under paragraphs 9 and 10.
George L. Humphrey subsequently died and the cor-
poration trustee became the Second National Bank
& Trust Company of Saginaw, sole trustee, as pro-
vided in the will. Under the provisions of the trust
in paragraph 9 of the will, payments were to be
made to certain legatees not parties to this litiga-
tion or any longer interested in the trust and the
balance of the income from the third trusteed under
paragraph 9 was to be paid to a sister, Lila Eddy
Doebler, of Baltimore, Maryland, and upon her
death one half of the corpus of the portion trusteed
under paragraph 9 was to belong to and be turned
over to her daughter, Cynthia Mills Cleveland, and
the other half was to belong to and be turned over
to the trustees under the trust created under para-
graph 10 of the will, referred to as the "charitable
trust," and devoted wholly to charitable, public and
educational purposes. Paragraph 10 contained a
provision that in case of any losses in the principal
of the trust estate, such losses should be made good
out of the income of the trust estate before the dis-
tribution of any further income to the beneficiaries.

The will gave the trustees complete powers to
hold, sell, invest and reinvest without any restric-
tions to investments that were legal for trustees un-
der the laws of the State of Michigan. It also pro-
vided that it was the testator's desire that the
"trust estates" be kept in the form they were in

unless the trustees found it financially advisable to discontinue the corporation, due consideration, however, to be given to the interest of the widow.

In June, 1934, the trustee under paragraphs 9 and 10 of the will filed a bill in the circuit court for the county of Saginaw in chancery against Lila Eddy Doebler, Cynthia Mills Cleveland, Richard Cleveland, the latter's son, and any other issue of Mrs. Cleveland surviving Mrs. Doebler. In its form as finally amended, it asked for a construction of the will so that the trustee could properly allocate moneys received. It alleged that certain shares of stock had been transferred to the trustee under paragraph 9 of the will, that the trustee had treated the dividends from the stock as income and had distributed them as such, that there would be further dividends paid; that at the time of Mr. Eddy's death, the Eddy corporation was engaged in a large number of businesses; also that it had been buying and selling and investing and reinvesting in bonds and stocks; that it owned large parcels of real estate, that at the time of Mr. Eddy's death the assets of the corporation were worth $3,600,000; that the assets of the estate had fluctuated owing to the world-wide depression and the general economic conditions that followed, but that there still remained a substantial portion of its assets, appraised at the time at $2,817,000; that the trustee was unable to determine, except at its peril, what was income and what was principal, whether Mrs. Doebler, the life tenant, was entitled to the moneys realized from certain dividends, or whether such amounts should be retained for Mrs. Cleveland, the remainderman, and her children; that the corporation had exchanged 1,320 shares of stock of the Second National Bank of Saginaw for 7,920 shares of stock in the Guardian Detroit Union Group, Inc., in a

bank merger; that the latter stock had become worthless, that the corporation had been forced to pay a large assessment, and that in all it had suffered a loss of $174,261.58 in this investment; that on the other hand it had realized the amount of $117,454.25, in excess of the appraised value of the preferred stock of the Saginaw Milling Company held by the corporation; that since Mr. Eddy's death, the corporation had paid out $1,387,250 in dividends which were partly used to pay debts, taxes, expenses, *et cetera*, and the trustee under paragraph 9 had received its share. The bill set forth the provision of paragraph 10 of the will directing the trustee to make good any losses before distributing any further income. The bill asked the court to hold that there had been no impairment of the capital stock of the Eddy corporation, and to determine whether the large sums paid out by the corporation were to be charged to the income or the corpus of the trust fund; that paragraph 9 of the will be construed and the trustee directed to whom dividends from the Eddy corporation belong. There was uncertainty in the will and the description and nature of the assets so as to require a judicial construction.

Upon the petition of Mrs. Cleveland, showing diversity of citizenship, the case was removed to the United States district court for the eastern district of Michigan, northern division. She filed an answer and cross bill, in which she alleged that at the time of Mr. Eddy's death the assets of the corporation were worth at least $4,500,000, and at least $4,000,000 after proper payments were made; that she and her children would be entitled to one sixth of the net assets of the Eddy Corporation upon the death of her mother, Mrs. Doebler. She asked

that the corporation itself, George B. Morley and
R. Perry Shorts, who managed it, be also made
cross defendants; that Charlotte H. Eddy, the
widow, also be made a cross defendant on the
ground that she actively assisted in and approved of
the acts of the corporation; that all of them
be held liable for gross mismanagement, and
failure of duty in not selling the stock of the Guard-
ian Detroit Union Group, Inc., when it was received
so that a very large loss was suffered, instead of a
profit of $800,000 being realized on this item alone.
She further charged that other losses were incurred
through the failure to sell stocks and securities
shortly after Mr. Eddy's death, or at a higher mar-
ket in the succeeding years. She asked that all the
cross defendants be held jointly and severally liable
for all such losses in the assets of the corporation
to the extent of one sixth thereof, that being the
share she was interested in under paragraph 9, and
that the trustee and other cross defendants be
charged with such amount. She asked that the
court administer the trust until the death of Mrs.
Doebler so that one half of the corpus under para-
graph 9 might then be delivered to Mrs. Cleveland
or her children without loss or depletion and at its
former value at the time of testator's death; that
in addition the court determine whether upon the
vesting of the trust cross plaintiff might not only
recover for all losses caused through the failure of
the trustee to dispose of all speculative stocks and
assets within a reasonable time, but also have the
benefit of the increase in value of all stocks and se-
curities as should have been disposed of to advan-
tage within such reasonable time, and before their
decrease in value later on. Mrs. Cleveland asked
for a judicial determination that she be entitled to

one sixth of the assets of the corporation and not of the shares of stock belonging to the estate. No objection was made to the jurisdiction of the court.

Mrs. Doebler died May 10, 1938, and Howell Van Auken was appointed ancillary administrator with the will annexed by the probate court of the county of Saginaw, Michigan. He intervened and in an answer and a counterclaim signed and sworn to by Mrs. Cleveland's attorney, acting as Mr. Van Auken's attorney in fact, charges of fraud were made against Mrs. Doebler's brothers, the late Arthur D. Eddy and the late Walter S. Eddy. The charges related to transactions that occurred in 1908 and succeeding years, but many years before the death of the Eddy brothers and Mrs. Doebler. Mrs. Cleveland was permitted to join as a counterclaimant. We need not discuss these countercharges. The court in a separate opinion and judgment dismissed them as without any foundation whatsoever.

On April 11, 1936, in an interlocutory order entered by the United States district court in the main case involving the construction of the will, it was ordered that the Eddy corporation be considered as not having any corporate existence, but merely as a fiction in the administration of the trusts under paragraphs 9 and 10 of the will; that the corpus of each trust was its respective share in the assets of the corporation; that all depreciation and losses in buying or selling of assets were chargeable to corpus, and any appreciation was to be credited to corpus; that the trustee file a full and complete account of its management of the trust since the death of the testator, such account to be made up in accordance with the findings made in construing the will. The court added that the order was interlocutory and until final decree any party might move for its modification.

After the taking of testimony at the hearing of the main case the trial judge completely set aside the interlocutory order, and held that the corporate form was not used as a sham or a fraud but that the Eddy corporation was a valid, existing corporation, and that the trust estate (created by paragraph 9 of the will) consisted of its share in the capital stock of the corporation, not in the corporate assets. He further held that the charges in Mrs. Cleveland's cross bill were absolutely groundless; that the cross defendants had acted with the highest degree of care and integrity. He commended them for their careful management and found that the only criticism that could be leveled against them was their failure to foresee the depression and the depreciation that followed; that they continued to hold the bank stock as the late Arthur D. Eddy would have wished; that the payment of dividends by the corporation was proper notwithstanding the fluctuation in the value of the stock. In a judgment entered February 7, 1939, the interlocutory order of April 11, 1936, was vacated except as to accounts and reports filed thereunder; all others filed by the trustee were also approved; the cross bill and counterclaim against the respective parties were dismissed and they were allowed their taxable costs. It further provided that the trustee file with the court a report of its disbursements in the case together with a statement of the accounts of its auditors and counsel, and upon approval thereof by the court, the amounts thereof should be paid out of the dividends due and to become due on the shares of stock in the corporation, that were to be turned over to Mrs. Cleveland, but that the trustee hold such shares until the payment of such amounts, except that $1,000 of this amount should be paid by the trustee under paragraph 10 of the will. It further

provided that all amounts that became due Mrs. Doebler during her lifetime were paid to and received by Mrs. Doebler or the Mercantile Trust Company of Baltimore under a deed of trust. The Mercantile Trust Company had intervened in the case and in the judgment it was also awarded taxable costs against Mrs. Cleveland.

Cross claimants Van Auken and Mrs. Cleveland took an appeal from the judgment disallowing their counterclaim to the United States circuit court of appeals, 6th circuit, and the judgment of the district court was affirmed. *Van Auken* v. *Second National Bank & Trust Co.* (C. C. A.), 117 Fed. (2d) 938. Certiorari was denied by the United States supreme court, 313 U. S. 593 (61 Sup. Ct. 1118, 85 L. Ed. 1547). Defendants and cross plaintiffs in the main case also took an appeal to the United States circuit court of appeals, 6th circuit, and the judgment of the district court was also affirmed, 117 Fed. (2d) 1009. A rehearing was denied. Certiorari to the United States supreme court was also denied, 313 U. S. 594 (61 Sup. Ct. 1119, 85 L. Ed. 1547).

On consideration of a petition filed by Mrs. Cleveland in the probate court for the county of Saginaw, Michigan, the court entered an order on January 22, 1942, refusing to direct the trustee to turn over to her a one sixth share in the estate and stating that the United States district court had ordered that she was not entitled to such share until payment of the trustee's disbursements and that the district court had set February 3, 1942, for fixing the amount of the expenses to be charged against the stock she would be entitled to, that the probate court had no jurisdiction in the premises, and it was ordered, adjudged and decreed that her petition be dismissed.

About May 1, 1942, the trustee filed an annual account in the probate court showing income and disbursements of the trust, and that it had paid out the sum of $45,520.89, approximately $39,000 of which it had paid out for attorneys' fees, and the balance for auditors' fees and other expenses. These amounts have not yet been approved by the United States district court, or considered because of the new litigation that was begun and the temporary injunction that was issued.

In the instant case, Cynthia Mills Cleveland, on January 15, 1942, filed a bill in the circuit court for the county of Saginaw in chancery, alleging that in the first case the court had never acquired jurisdiction of the subject matter of the suit when, in 1934, the trustee filed its bill hereinbefore outlined, and Mrs. Cleveland removed the cause to the United States district court wherein she filed answer and cross bill, *et cetera,* as hereinbefore more fully set forth. She further alleged that all the proceedings by the trustee were so vitiated with fraud that they must be totally disregarded and held to be void. She asked for an order restraining all parties to the former litigation from any and all further proceedings under the judgment rendered therein and from bringing on for hearing or allowance in, or submitting or contending for any and all written or oral claims for counsel fees, auditors' expenses, fees or services, and from asserting any rights for such fees and expenses or prosecuting such claims in any other tribunal except the probate court for the county of Saginaw until the further order of the chancery court. After an order to show cause had been duly issued and served, the chancery court issued a temporary injunction as prayed for. Thereupon the trustees, the Eddy corporation and

R. Perry Shorts, one of its directors, made a motion to dismiss. This was denied without prejudice. Thereupon the bank, as trustee under paragraphs 9 and 10, and Charlotte Eddy Morgan, as plaintiffs, applied to this court for writs of prohibition and mandamus for the purpose of restraining any further action by the Hon. Neil E. Reid, circuit judge, sitting in Saginaw county in this new chancery case brought by Cynthia Mills Cleveland, except to dismiss the bill. We issued an order to show cause and Judge Reid filed an answer. There are attached to plaintiffs' petition in the instant case copies of pleadings, with exhibits attached, consisting of orders, findings of the district court, judgments and other records in the previous litigation and due reference is made thereto. Defendant's attorney has also submitted copies of additional records. From all of them, we can determine the question now before us. Are plaintiffs entitled to writs of prohibition and mandamus?

Plaintiffs in their petition made a complete *prima facie* showing upon which we issued an order to show cause. Plaintiffs claim that the main questions raised in Mrs. Cleveland's bill of complaint are *res judicata* and that her other claims have no merit in either law or fact as shown by the records. If plaintiffs are correct, they are entitled to the writs prayed for. *Bates* v. *Alpena Circuit Judge,* 82 Mich. 91 (21 Am. St. Rep. 554); *Detroit United Railway* v. *Wayne Circuit Judge,* 204 Mich. 543. Litigation must come to an end and Mrs. Cleveland, after removing the former case to the Federal court and after a complete hearing, accounting, findings of fact, judgments adverse to herself, unsuccessful appeals to the circuit court of appeals and denials of certiorari by the United States supreme court, may not begin anew by invoking the aid of the Saginaw

circuit court in chancery (from which she removed the former case), and thereby seek to have former judgments held for naught, the successful parties enjoined from taking action thereunder, and the main issues retried, unless there is merit in the answer filed by the circuit judge to the order to show cause.

We shall consider only the main questions raised. Limitations of time and space preclude us from going into unimportant details or discussing such questions raised as we regard as of no consequence, or many of the voluminous authorities cited and which we regard as being neither relevant nor pertinent. We shall refer to the chancery suit begun in 1934 as the "first suit," that begun in 1942 as the "second suit," the petition for the writs and answer as the "instant case." We shall refer to the trustee bank and Charlotte Eddy Morgan as "plaintiffs," and to Mrs. Cleveland and the circuit judge interchangeably as "defendant," unless otherwise stated.

(1) Defendant claims that mandamus cannot issue, as proper leave to appeal in the nature of mandamus was not first obtained, and there was no application in proper form in accordance with Court Rule No. 60 (1933), as amended. This objection was not made in the answer of defendant circuit judge. The writ of mandamus herein is only sought as ancillary to the writ of prohibition if plaintiffs are entitled to the latter writ.

(2) Defendant contends that the issues presented in the second suit on account of which plaintiff seeks the writs are not *res judicata;* that the court never at any time acquired any jurisdiction over the subject matter in the first suit; that jurisdiction cannot be conferred by consent of parties in cases where the court has no jurisdiction over such subject matter; that, therefore, the judgments rendered in the first suit are nullities and of no effect whatsoever.

In the first suit a construction of the Eddy will was sought and, dependent upon it, the approval of the trustee's accounts. Mrs. Cleveland, after causing the removal of the case to the Federal courts, filed a cross bill making Mr. Eddy's widow and others cross defendants. She also joined with the ancillary administrator *de bonis non* in asserting a claim arising out of transactions between people, all of whom had died prior to the assertion of the claim. Having failed in all phases of the litigation, Mrs. Cleveland undertook in the instant suit to litigate all over again questions that had been determined by the previous judgments. The principle of estoppel would apply in the fullest force if the questions decided in the first suit were not *res judicata*. The first suit resulted in numerous disputed questions being raised and many new parties, in addition to the trustee, being brought in. For that reason alone, if for no other, equity was a proper forum. *Scripps* v. *Sweeney,* 160 Mich. 148; *Pungs* v. *Hilgendorf,* 289 Mich. 46. Equity had inherent jurisdiction over the construction of a will. If there was any uncertainty over the payment of moneys under a legacy, a court of equity was a proper forum in which to seek a construction. *MacKenzie* v. *Union Guardian Trust Co.,* 262 Mich. 563, in which many authorities are cited.

(3) While it is true that under subdivision 2 of section 15519, 3 Comp. Laws 1929 (Stat. Ann. § 27.2619), the probate judge was given jurisdiction over testamentary trusts and trustees, subdivision 6 of the same section contained the distinct proviso that the section did not deprive the circuit court of concurrent jurisdiction as originally exercised over the same matter. Prior to the enactment of the testamentary trust act (Act No. 253, Pub. Acts 1899), the chancery court had jurisdiction over

testamentary trustees.   Section 46 of Act No. 253, Pub. Acts 1899, was the same as at present except that the word "chapter" has been substituted for the word "act."   As it reads now, 3 Comp. Laws 1929, § 15905 (Stat. Ann. § 27.3084), provides that:

"The provisions of this chapter shall not be construed to in any manner limit, change, modify or abolish the jurisdiction as it now exists, of the courts of chancery of this State, of, over or concerning such trustees and trust estates, but the same shall remain and continue in all respects as though this chapter had not been passed."

Attention is specifically called to *Kundinger* v. *Kundinger*, 150 Mich. 630, where we said:

"The case does not fall within Act No. 253 of the Public Acts of 1899, as that act relates to the jurisdiction  *  *  *  over testamentary trusts and trustees, and is limited to carrying into effect the provisions actually made by will.   But even in such case, by section 46 of the act, the former jurisdiction of courts of chancery is preserved.   The case of *Cole* v. *Cole's Estate,* 125 Mich. 655, rests upon this statute."

We need not discuss the effect of the repeal of the foregoing section by the probate code, Act No. 288, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–1[1] *et seq.,* Stat. Ann. 1942 Cum. Supp. § 27.3178[1] *et seq.*).   The effective date, September 29, 1939, was subsequent to the judgments in the first suit.   The code contains a saving clause in chapter 13, § 5 (Comp. Laws Supp. 1940, § 16289–13[5], Stat. Ann. 1942 Cum. Supp. § 27.3178[615]).

Defendant has cited many cases in support of his contentions.   It is unnecessary to discuss all of them as we do not find them applicable.   However, we briefly refer to some of them especially empha-

sized. In *Lambert Run Coal Co.* v. *Baltimore & Ohio R. Co.*, 258 U. S. 377 (42 Sup. Ct. 349, 66 L. Ed. 671), it was held that the State court had no jurisdiction when the subject matter was one that originally could only have been brought in the Federal court and not even in that case without joining the United States as a necessary party after receiving its consent to the suit. The question of jurisdiction was raised in the case itself. In *Wessborg* v. *Merrill*, 195 Mich. 556 (L. R. A. 1918 E, 1074), also stressed by defendant, it was held that the probate court had jurisdiction of an accounting of an executor who assumed to act as a trustee without first filing the necessary bond. The plaintiff had first made an unsuccessful effort to secure such accounting in the chancery court by what the court described as a "bill in chancery and a petition for removal of the executor, which proved abortive." We did not hold that the chancery court would not have had jurisdiction to construe a will with necessary incidental relief dependent upon such construction.

(4) In view of what we have heretofore stated, it becomes unnecessary to discuss the doctrine of *res judicata* invoked by plaintiffs and which applies in the instant case. We but recently discussed this doctrine in *Auditor General* v. *Olezniczak*, 302 Mich. 336, and *Dodge* v. *Detroit Trust Co.*, 300 Mich. 575, in which we quoted from *Chicot County Drainage District* v. *Baxter State Bank*, 308 U. S. 371 (60 Sup. Ct. 317, 84 L. Ed. 329). See, also *Treinies* v. *Sunshine Mining* Co., 308 U. S. 66 (60 Sup. Ct. 44, 84 L. Ed. 85); *Sunshine Anthracite Co.* v. *Adkins*, 310 U. S. 381 (60 Sup. Ct. 907, 84 L. Ed. 1263); *Jackson* v. *Irving Trust Co.*, 311 U. S. 494 (61 Sup. Ct. 326, 85 L. Ed. 297).

(5) Mrs. Cleveland, however, claims that the judgments in the first case were obtained by fraud

and, therefore, she is not bound by them and defendant in the second suit should be enjoined from taking any action under the judgments rendered therein. We shall briefly refer to the claims of fraud made in the answer of the circuit judge in the instant case..

(a) It is charged that the purpose of filing the first bill by plaintiff trustee was to secure a judg-. ment to the effect that the corpus of the trust estate consisted of the ''mere par value shares'' of the family corporation, and thus relieve the trustee from liability from heavy losses in the surplus of the said corporation and, of necessity, in the corpus of said trusts. A reading of the amended bill of complaint, the interlocutory order, the findings of the district judge, the judgments, shows that the charge of fraud in this respect is utterly unfounded.

(b) It is charged that in the argument of February 4, 1941, before the United States circuit court, 6th circuit, on the appeal by defendants and cross plaintiffs in the first case, the attorney for the appellee made the statement that Mrs. Cleveland's one sixth interest was worth $616,000 at the time of Mr. Eddy's death in April, 1925, and was worth as much or more at the time of the argument. The record before the court showed the heavy losses so that the attorney for the appellee was in error in making such statement. However, the statement did not go unchallenged for the attention of the United States court of appeals was called to its incorrectness in a petition for rehearing, which the court denied. The record plainly shows that the fastening of responsibility for the heavy losses was one of the main purposes of appellant's cross bill. The district judge discussed this question in his findings. The record submitted to the court of appeals showed such losses. The court of appeals affirmed

the judgments and denied the rehearing after its attention was specifically called to the alleged misstatement of counsel.

(c) Defendant claims that the Mercantile Trust Company of Baltimore, in filing a brief in the United States supreme court in opposition to appellants' petition for certiorari, connived with appellee. The Mercantile Trust Company had been appointed trustee by Mrs. Doebler to collect the income due her during her lifetime from the trust created for her under the ninth paragraph of the will. To just what extent the Mercantile Trust Company was involved in the litigation is not shown, but it did intervene in the first suit. In the answer and counterclaim of Howell Van Auken, ancillary administrator with the will annexed, and in which Mrs. Cleveland joined as a counterclaimant, it is alleged that Mrs. Cleveland had instituted suit in Maryland against the Mercantile Trust Company. The latter's position obviously was antagonistic to Mrs. Cleveland for the district judge awarded it taxable costs against her. The record shows that the Mercantile Trust Company had been put to large expense on account of the litigation. We find no fraud in its filing a brief in the United States supreme court. The facts disclosed by the record show that the charges of connivance have no basis. Connivance as a rule denotes silence or secrecy; filing a brief in the United States supreme court does not.

(6) Mrs. Cleveland further contends that the Federal judgments are void and of no effect, because the "charitable trust" was not represented by the prosecuting attorney and attorney general. Her complaint is somewhat untimely and, if of any merit, comes too late. After she had the first case removed to the United States district court, and filed a cross

bill, she impleaded a number of other parties, but not public officials, representing the "charitable trust." Possibly this is explained by one of the items of relief asked in her bill in her second suit, and in which she asks it be decreed and adjudged that she be entitled to a full contribution from the "charitable trust" for three fourths of any and all attorneys' fees or counsel or auditors' expenses and fees she may have incurred or be finally required to pay, including those in the first suit as required by the judgments therein. At most, it might be claimed that the "charitable trust" was not bound by the judgments in the previous suit. This in no respect releases Mrs. Cleveland from the judgments against her.

(7) Defendant rightfully contends that on a motion to dismiss all proper allegations of fraud must be assumed to be true in considering such motion or petition for writ of prohibition. Defendant refers repeatedly to *Brachman* v. *Hyman,* 298 Mich. 344, wherein we held that a judgment, not vacated or appealed from, cannot be collaterally attacked and the only fraud on account of which equity will interfere is fraud in obtaining the judgment. The record itself before us negates such fraud, or any other fraud.

(8) Defendant further claims that plaintiff trustee waived or abandoned its rights under the judgment because it filed an annual account of its trust under paragraph 9 for the period from July 1, 1941, to April 30, 1942, but also showing some previous disbursements. All of them were made on account of the "Doebler-Cleveland" litigation and aggregate $45,520.89. The account states:

"The assets of this trust are held subject to the terms of the final judgment filed February 7, 1939, in the United States district court in Bay City,

Michigan, in Case No. 540, in equity, and the dividends on the shares of stock eventually to be turned over to Cynthia Mills Cleveland are to be applied on the expenses of the trustee incurred in said litigation, and said trustee under said decree is authorized to retain her shares of stock, hold the legal title thereto, vote the same, and collect the dividends thereon until the aforesaid expenses are paid.''

By the terms of this judgment the disbursements are to be approved by the United States district court. The filing of the account was no waiver. It expressly referred to the judgment, which it relied upon.

(9) Mrs. Cleveland further claims that the large sums she would be charged with for costs and expenses are wholly illegal and improper; that under *Davidson* v. *Young,* 290 Mich. 266, the trustee had the burden of proving the correctness of his account. The court in its findings held that the trustee had met this burden. The first suit was removed to the Federal court by Mrs. Cleveland and she is bound by the judgment. In *Sprague* v. *Ticonic National Bank,* 307 U. S. 161 (59 Sup. Ct. 777, 83 L. Ed. 1184), the United States supreme court approved of the ''reimbursement for the costs of litigation other than the conventional taxable costs.'' The judgments of the Federal court are final and the parties are bound thereby.

(10) Defendant further claims that by filing an answer in the second suit the corporate trustee has abandoned its petition for mandamus filed in this court. Plaintiff trustee states that it was obliged to do this in order to prevent a default being taken against it. We do not believe there was any abandonment so as to preclude the filing of the petition for the writs prayed for.

Writ of prohibition and ancillary writ of mandamus will issue, with costs to plaintiffs.

BOYLES, C. J., and CHANDLER, NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.