## CLEVELAND v. SECOND NAT. BANK & TRUST CO.

### No. 9802.

Circuit Court of Appeals, Sixth Circuit.

May 22, 1945.

Howell Van Auken, of Detroit, Mich., for appellant.

Hugo E. Braun, of Saginaw, Mich., for appellee.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The appeal is from a final judgment in one phase of the much litigated estate of Arthur D. Eddy of Saginaw, Michigan, and challenges allowances of counsel fees and costs expended or incurred by the trustee in defending against the appellant's counterclaim and cross-bill in a suit originally instituted to construe the trust provisions of the Eddy will. The judgment is also attacked because the disbursements of the trustee are made a charge upon the dividends of shares of stock eventually to be turned over to the appellant in pursuance of the provisions of the trust.

Several aspects of the Eddy litigation have been here before and have been called to the attention of the Supreme Court of the United States, as will presently and more fully appear. If our difficulty in coming to a complete understanding of the issues now raised has been due to an assumption in the briefs that the court would recollect what was submitted and argued in the earlier cases, and would be similarly constituted, that difficulty has been resolved by the painstaking recital of the litigation leading to the assailed judgment made by the Supreme Court of Michigan in Second Nat'l Bank v. Reid, 304 Mich. 376, 8 N.W. 2d 104, to which we are greatly indebted. It there appears that notwithstanding our decisions affirming earlier judgments of the District Court, the denial of petitions for rehearing, and the refusal of the Supreme Court to review, the litigation was sought to be renewed upon substantially identical issues in the Probate and Circuit Courts of Saginaw County, requiring the issue of a writ of prohibition and an ancillary writ of mandamus by the Supreme Court of Michigan, to bring the basic controversy to an end.

As disclosed in the Michigan case, Eddy died testate in 1925, the principal asset of his large estate being the entire capital stock of C. K. Eddy & Sons, a holding company of stocks, bonds, real estate, and other property having a value of $3,600,000 at the time of his death. His will established trusts of which the appellee is now sole trustee. After provisions with which we are not now concerned, the income from ⅓ of his estate, trusteed under paragraph 9 of the will, was to be paid to a sister, Lila Eddy Doebler, and upon her death ½ of the corpus was to belong to and be turned over to her daughter, the appellant, and the other ½ to a charitable trust created by paragraph 10. The latter paragraph provided that losses in the principal of the trust estate should be made good out of income before the disposition of any further income to the beneficiaries.

In June, 1934, the trustee, conceiving that the provisions creating the trust were not clear, filed a bill in the Circuit Court for Saginaw County in Chancery, asking the court to hold that there had been no impairment in the capital stock of the Eddy Corporation, to determine whether sums paid by that corporation were to be charged to the income or the corpus of the trust fund, and in other respects to construe the trust. Upon appellant's petition based upon diversity of citizenship, the case was removed to the District Court for the Eastern District of Michigan, Northern Division, where the appellant filed an answer and cross-bill in which she alleged that at the time of Eddy's death the corporate assets were worth at least 4½ million dollars; that she and her children would be entitled to ⅙ of such assets at the death of her mother, Mrs. Doebler; that the corporation, its managers, and the widow of the decedent be made cross-defendants, that all of them be held liable for gross mismanagement of the corporation, and that losses in assets be charged to them and the trustee. She asked the court to administer the trust until the death of Mrs. Doebler, so that ½ of the corpus might be delivered to her and her children without loss or depreciation and at its value at the time of the testator's death, and in addition, a determination that she be entitled to ⅙ of

the assets of the corporation rather than the corporate shares in the estate.

With the interlocutory proceedings recited we are not now concerned, but after extended hearings in the main case the district judge found the charges in the appellant's cross-bill to be absolutely groundless; that not only had there been no mismanagement, but the trustee was to be commended for wise and careful administration; that the Eddy Corporation was not a sham or fraud, but a valid existing corporation, and the trust estate consisted of its share in the capital stock of the corporation and not of its corporate assets. On February 7, 1939, a judgment was entered dismissing the cross-bill and counterclaim, providing that the trustee file with the court a report of its disbursements in the case, together with accounts of its auditors and counsel; that upon approval thereof by the court, the amounts thereof should be paid out of dividends due and to become due on the shares of stock in the corporation that were, by the terms of the trust, to be paid to the appellant; and that the trustee should hold such shares until payment, except that $1,000 of the total should be paid by the trustee of the charitable trust created by paragraph 10 of the will. It also adjudged that all amounts that became due to Mrs. Doebler during her lifetime had been paid to and received by her or her trustee.

Prior to the entry of this judgment on May 10, 1938, Mrs. Doebler died and Howell Van Auken was appointed ancillary administrator by the Probate Court of Saginaw County. He was permitted to intervene, and in an answer and counterclaim made charges of fraud both against the decedent and his deceased brother, Walter S. Eddy, relating to transactions in 1908 and succeeding years, long before the death of the Eddy brothers and Mrs. Doebler. The appellant was permitted to join as a counterclaimant. The District Court, in a separate opinion and judgment, dismissed these charges as without any foundation whatsoever.

From the several judgments, Van Auken, as administrator of the estate of Lila Doebler, and Van Auken and the appellant as cocross-complainants, appealed. Each judgment was here affirmed, Van Auken v. Second Nat'l Bank & Trust Co., 6 Cir., 117 F.2d 938; Van Auken & Cleveland v. Second Nat'l Bank & Trust Co., 6 Cir., 117 F.2d 1009. A petition in each case for certiorari was, by the Supreme Court, denied. 313 U.S. 593, 61 S.Ct. 1118, 85 L.Ed. 1547; 313 U.S. 594, 61 S.Ct. 1119, 85 L.Ed. 1547.

Further proceedings in the District Court awaited the outcome of the new litigation begun by the appellant in the courts of Michigan. This consisted of a petition by the appellant in the Probate Court for the County of Saginaw, praying that the trustee be directed to turn over to her ⅙ share of the estate. Her petition was denied on the ground that the United States District Court had ordered that she was not entitled to such share until payment of the trustee's disbursements, and that the Probate Court had no jurisdiction. About May 1, 1942, the trustee filed its annual account in the Probate Court showing income and disbursements of the trust, that it had paid out the sum of $45,520.89, approximately $39,000 of which had been for attorney's fees, but that these amounts had not yet been approved by the United States District Court or considered because of new litigation and a temporary injunction that had been issued. The injunction was upon a bill filed by the appellant in the Circuit Court for the County of Saginaw in Chancery which alleged that the United States District Court had never acquired jurisdiction of the subject matter of the suit when, in 1934, the trustee had filed its bill for construction of the trust. The appellant further alleged that all proceedings by the trustee were so vitiated with fraud that they must be totally disregarded and held to be void. She asked for an order restraining all parties in the earlier litigation from proceeding under the District Court judgments, and from bringing on for hearing any allowances for counsel fees and expenses, or prosecuting claims in any tribunal except the Probate Court for the County of Saginaw. A petition for dismissal by the trustee and other defendants was, by the Circuit Judge, overruled. This led to the proceedings in the Supreme Court for a writ of prohibition and an ancillary writ of mandamus, granted by the Michigan Supreme Court in Second Nat'l Bank v. Reid, supra. In its opinion, after reciting the litigation of which the foregoing is a condensation, the court concluded [304 Mich. 376, 8 N.W.2d 109], "Having failed in all phases of the litigation, Mrs. Cleveland undertook in the instant suit to litigate all over again questions that had been determined by the previous judgments. The

principle of estoppel would apply in the fullest force if the questions decided in the first suit were not here res adjudicata." It also decided that a reading of the amended bill of complaint, the interlocutory order, the findings of the district judge, and the judgments, showed that the charge of fraud in the appellant's bill in the Saginaw Circuit Court was "utterly unfounded." Rehearing was denied April 6, 1943, and petition for certiorari denied October 11, 1943, 320 U.S. 745, 64 S.Ct. 48, 88 L.Ed. 443.

It was against this background of persistent, harassing, and futile litigation that the final account of the trustee came on for hearing before the district judge, resulting in a judgment on November 30, 1943, approving disbursements in the sum of $47,-113.14, which included $39,000 of counsel fees in defending the trust against the several counterclaims and cross-bills in the district court, this court and the Supreme Court, authorizing the trustee to retain the shares distributable to the appellant and to apply the dividends thereon to the disbursements until they are paid, and leaving costs of state litigation to be determined in the state courts. This decree is here assailed on numerous grounds, not all of them entirely clear and some apparently overlapping. As we interpret them, however, the appellant denies the power of the District Court to tax extraordinary attorney's fees; asserts that if it had such power it is circumscribed and limited by our mandates affirming previous judgments, and in any event does not include power to allow attorney's fees upon appeal and upon petitions for certiorari; asserts error in charging the appellant with expenses for the entire proceeding when her counterclaim and cross-bill involved but a single of several issues litigated; asserts the previous judgments lacking in finality; and declares the fees allowed to be excessive.

There is no room for doubt that an equity court may, under extraordinary circumstances, impose upon the defeated plaintiff in an equity case, the entire cost of defense notwithstanding statutory limitations upon costs to be taxed at law. Sprague v. Taconic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Guardian Trust Co. v. Kansas City Southern R. Co., 8 Cir., 28 F.2d 233, 245. As was said in the latter case after an exhaustive review of the precedents, "Furthermore, in cases where a trustee has been brought into court by a cestui que trust upon charges of maladministration which have proved to be unfounded, costs 'as between solicitor and client' have been allowed the trustee, though there has been no fund in court." It is pointed out in Perry on Trusts, 6th Ed., § 894, "trustees have no beneficial interest in the trust property. They hold it for the accommodation and benefit of others. If they perform their duties faithfully, and are guilty of no unjust, improper, or oppressive conduct, they ought not in justice and good conscience to be put to any expense out of their own moneys. If, therefore, they are brought before the court without blame on their part, they should be reimbursed all the expenses that they incur, and allowed their costs as between solicitor and client for this purpose."

It is true that in many cases wherein costs have been allowed to the prevailing party as between solicitor and client rather than as between party and party, they were allowed, as in Sprague v. Taconic Bank, supra, and in our case of O'Hara v. Oakland County, 6 Cir., 136 F.2d 152, because a fund had been brought into court by reason of the proceeding, to the benefit of the plaintiff or to the members of a class. But it is clear from the Sprague case and other adjudications, that the doctrine is not limited to such situations but may be invoked against one of the parties as "fair justice" to the other will permit, and that the allowance of such costs in appropriate situations is part of equity jurisdiction of which the federal courts were given cognizance ever since the first Judiciary Act, 1 Stat. 73, consisting of that body of remedies, procedures, and practices which theretofore had been evolved in the English Courts of Chancery.

But aside from the historical basis for the remedy, the allowance of extraordinary fees and other costs in the District Court must be sustained on the principle of res judicata. The District Court decree of February 7, 1939, sustained against this appellant in Van Auken v. Second Nat. Bank & Trust Co., 6 Cir., 117 F.2d 1009, specifically provided that the disbursements of the trustee, both for expenses and the fees of counsel, should be reported to the court, and when allowed be made a charge upon the dividends of the appellant's share in the trust estate. Kansas City Southern R. Co. v. Guardian Trust Co., 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659, is not contra, for in that case there was no provision for extraordinary costs in the decree reviewed.

■ Though not on the ground of res judicata, the power to grant costs as between solicitor and client in respect to costs on appeal must also be recognized as residing in the District Court, subject, of course, to review as to their actuality and reasonableness. As was said of such costs in Sprague v. Taconic Bank, supra [307 U.S. 161, 59 S.Ct. 781] "They are not of a routine character like ordinary taxable costs; they are contingent upon the exigencies of equitable litigation, the final disposition of which in its entire process including appeal places such a claim in much better perspective than it would have at an earlier stage." The inquiry is a collateral one, having a distinct and independent character. Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157.

That the present litigation was exceptional is not to be doubted either upon this record or the survey made by the Michigan Court in Second Nat'l Bank v. Reid, supra. The charges of mismanagement and fraud were not in any substantial respect supported. Their only basis was lack of clairvoyance on the part of the trustee in sensing an impending world-wide economic crisis, a prescience denied to the foremost industrialists and financiers of the period. It is common experience that charges of mismanagement and fraud against fiduciaries will speedily blast the best reputations, and it is also common experience that once destroyed they may not easily be restored. That the charges in the appellant's counter-claim and cross-bill were without foundation, was the judgment of the District Court; it was the judgment of this court; it was also upon consideration of our decisions, the judgment of the Michigan Court.

■ The contention that the 1939 judgment here affirmed was not a final judgment must be rejected. The basic issues between the parties were there fully determined. The responsibility of the counter-claimant and cross-plaintiff was there fixed, and the remedy to be applied was there indicated. All that remained to be done was to compute the trustee's disbursements and adjudicate their actuality and reasonableness. This was undoubtedly the view of the appellant and her counsel when the appeal was taken as from a final judgment. Simmons Co. v. Grier, 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475, is not at all in point. Nothing here remained "to bring the suit to a conclusion upon the merits" (258 U.S. page 89, 42 S.Ct. page 199, 66 L.Ed. 475). A suit for patent infringement seeking injunction and damages, however, presents two meritorious issues. There may be no final decree until both prayers are adjudicated and an inquiry as to damages is "an inquiry not formal or ministerial but judicial."

■ There is no merit in the suggestion that extraordinary costs should not have been allowed, because the suit below was started by the appellee and not by the appellant. The court rightly found that the amount of services rendered and the expense involved would have been almost negligible except for the contentions raised by the appellant in her counterclaim and cross-bill. Nor was there error in imposing substantially all of the costs upon her. The district judge found that "the whole battle, the whole fight, grew out of the claim Mrs. Cleveland raised that the bank stock should have been sold before the slump of February, 1933," and concluded that "the expense should be borne by the party that was in error and caused the trouble and expense, and the ends of justice would not be met by simply taxing the statutory costs." Undoubtedly there is support for the finding and justification in equity for the conclusion. The appellant initiated the main controversy, she joined in her mother's cross-bill, and the lawyers were the same or associated. Furthermore, the court found that Mrs. Doebler had received all the income of the trust to which she was entitled. There was therefore no fund within the control of court or trustee out of which the trustee's expenditures could from her be recovered. That Mrs. Doebler's estate is now entirely solvent, in control of a trustee in Baltimore, and subject to accounting in the Federal Equity Court of Maryland, does not, under the circumstances of this case, demonstrate abuse of discretion. The court having put the onus for this harassing litigation where it rightfully appears to belong, was not obliged, in the exercise of sound discretion, to relegate the trustee to the uncertainties of litigation in a distant forum, where perchance its right to recover disbursements would require that it again surmount the same or new obstacles, and tread again a highway of appeal, reconsideration, and certiorari.

■ There remains the contention that counsel fees allowed by the court to the trustee were exorbitant. This always pre-

sents a difficult problem for a court of review. The district judge was, however, familiar with all of the facts and circumstances of the case; he heard and saw the witnesses; he knew the standing and ability of the lawyers, and the allowances were well within the evidence. Under familiar rules his findings should not be disturbed except for a clear abuse of discretion. We are not prepared to say that his allowances to the trustee for counsel fees were unreasonable, and other allowances are not seriously challenged. We have examined all of the issues raised by the appeal. Those not specifically discussed are found to be without merit.

Judgment affirmed.