**FOREST LABORATORIES, INC.,**
Plaintiff,

v.

**FORMULATIONS, INC. and the Pillsbury Company, Defendants.**

**No. 67–C–128.**

United States District Court,
E. D. Wisconsin.
Nov. 27, 1970.

See also, D.C., 299 F.Supp. 202.

Foley & Lardner, by Maurice J. Mc-Sweeney, Milwaukee, Wis., March, Pelton & Gillette, New York City, by Arthur A. March, New York City, of counsel, for plaintiff.

Quarles, Herriott, Clemons, Teschner & Noelke, by Arthur H. Seidel, Milwaukee, Wis., Cushman, Darby & Cushman, by C. Willard Hayes, Washington, D. C., for defendants; Ronald E. Lund, Minneapolis, Minn., of counsel.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

Both the plaintiff, Forest Laboratories, Inc., and the defendant, the Pillsbury Co. have filed written objections to the report of the special master in this case. The special master's report was filed on September 3, 1970, and briefs have been submitted in support of each side's respective position. In addition, a hearing was held concerning the objections on November 6, 1970.

In his report, the special master analyzed the issues which were referred to him by the court, and, in his conclusion, he itemized nine findings of fact and five conclusions of law. The special master then recommended "that judgment be entered in favor of the plaintiff in the amount of $75,000."

With reference to the findings of fact, it is clear that under Rule 53(e) (2), Federal Rules of Civil Procedure, this court is obliged to accept such findings unless they are "clearly erroneous". In Arrow Distilleries, Inc. v. Arrow Distilleries, Inc., 117 F.2d 636, 639 (7th Cir. 1941), the court stated:

> "Under this rule the court cannot reject the master's findings of fact unless they are clearly erroneous. We think they were not clearly erroneous in this case."

The special master received briefs from the parties and also took over 300 pages of testimony on the subject of damages. My review of such evidence persuades me that his findings of fact are not clearly erroneous. Special objection is made by the defendant to the eighth finding of fact, wherein the special master determined that the plaintiff had invested approximately $230,000 in developing its tablet-tempering process. In reaching such finding, the special master obviously accepted Mr. Lowey's testimony on that subject, and his testimony is not inherently incredible. Thus, this finding is not "clearly erroneous". It should be noted however, that the special master did not adopt such figure as his recommended dam-

ages, but weighed it along with other factors, including the plaintiff's loss of profits and the limited period of time which was involved (January 1, 1964 to March 16, 1965).

The defendant also challenges finding no. 4 of the special master to the effect that the plaintiff would have earned approximately $30,000 during the period in question; finding no. 4 is not, in my opinion, clearly erroneous.

Unlike the findings of fact, the conclusions of law reached by the special master "have no effect except to the extent that they are correct propositions of law." 5 Moore, Federal Practice, ¶ 53.12[5], at 3021 (1969).

■ I have carefully examined the five separate conclusions of law and consider them to be correct. In adopting the "reasonable royalty" theory of this case, the special master applied a proper standard for the determination of damages under the peculiar circumstances of this case. See Vitro Corporation v. Hall Chemical Co., 292 F.2d 678 (6th Cir. 1961). This was the standard applied in Enterprise Mfg. Co. v. Shakespeare Co., 141 F.2d 916, 919 (6th Cir. 1944), where the court quoted from Egry Register Co. v. Standard Register Co., 23 F.2d 438, 443 (6th Cir. 1928):

"In fixing a reasonable royalty, the primary inquiry, often complicated by secondary ones, is what the parties would have agreed upon, if both were reasonably trying to reach an agreement."

The defendant argues that the court must determine a *rate* of royalty (e. g. 5%) and apply it to the defendant's sales; this would ignore other proper factors, such as development cost and plaintiff's loss of profits. By the same token, the special master was not obliged to adopt the testimony of the plaintiff's chairman that $180,000 would have been required by the plaintiff as an annual payment to procure a license for this trade secret.

The search for a reasonable royalty was discussed in Union Carbide Corporation v. Graver Tank & Mfg. Co., 282 F.2d 653, 674 (7th Cir. 1960), where the court said:

"As pointed out in many cases, including Activated Sludge, in a case where no established royalty is shown it is for the Court to determine a reasonable royalty which represents the value of that which has been wrongfully taken by the infringer. That has been done in this case. Without repeating our previous discussion, it is sufficient to point out that in making such determination many factors were taken into consideration, including Lincoln's profits not only from the sale of the infringing flux but also from the sale of non-infringing items. In fact, the reasonable royalty was based upon the advantages which would have accrued to Lincoln had it negotiated a license with Union Carbide."

■ While the determination of "reasonable royalty" in this case is something concerning which the parties are widely divergent, I believe that the special master has made a just and sensible recommendation. The plaintiff contends that the secret which it lost was worth more than $1,000,000, and the defendant insists that the damages should be closer to $5000. It is my opinion that $75,000 is a fair figure, consistent with all the circumstances that have been brought to bear in this case; the figure recommended by the special master competently appraises "the actual value of what has been appropriated". Vitro Corporation of America v. Hall Chemical Company, 292 F.2d 678, 683 (6th Cir. 1961).

There was no express direction from the court to the special master on the subject of attorneys' fees, and his report does not touch upon such subject. The plaintiff contends that it has expended approximately $75,000 in attorneys' fees and that an allowance for such fees is a proper element of the damages to which it is entitled as a result of its successful litigation. The defendant, on the other hand, argues that an allowance of attorneys' fees is improper in a case such as the one at bar.

The general rule appears to be that, in the absence of other compelling circumstances, the prevailing party cannot recover attorneys' fees unless provided for by contract or statute. Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 407 F.2d 288, 298 (9th Cir. 1969); Annot., 8 L.Ed.2d 894, 902 (1963); 22 Am.Jur.2d, Damages § 165, at 234 (1965).

■■■ In diversity actions, a federal court will apply state law with respect to the allowance of attorneys' fees and Wisconsin law accords with the general rule. See Cedarburg Light and Water Comm. v. Glens Falls Ins. Co., 42 Wis.2d 120, 124, 166 N.W.2d 165 (1969) and Baker v. Northwestern Nat'l Cas. Co., 26 Wis.2d 306, 318, 132 N.W.2d 493 (1965).

■■ On the other hand, federal courts follow those equitable principles developed by federal law, since state law is not applicable to federal court equity procedure. Annot., 8 L.Ed.2d 894, 901 n.7 (1963). Thus, in appropriate situations, and notwithstanding the general rule, a federal court may apply equitable principles and award attorneys' fees to a prevailing party.

In Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 169, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), cited by the plaintiff in its brief, the court said that the allowance of counsel fees "as between solicitor and client" is proper "in exceptional cases and for dominating reasons of justice." This statement was amplified in Cleveland v. Second Nat'l Bank & Trust Co., 149 F.2d 466 (6th Cir. 1945), where the court said (p. 469):

"It is true that in many cases wherein costs have been allowed to the prevailing party as between solicitor and client rather than as between party and party, they were allowed, as in Sprague v. Ticonic Bank, supra, and in our case of O'Hara v. Oakland County, 6 Cir., 136 F.2d 152, because a fund had been brought into court by reason of the proceeding, to the benefit of a plaintiff or to the members of a class. But it is clear from the Sprague case and other adjudications, that the doctrine is not limited to such situations but may be invoked against one of the parties as 'fair justice' to the other will permit, and that the allowance of such costs in appropriate situations is part of equity jurisdiction of which the federal courts were given cognizance ever since the first Judiciary Act, 1 Stat. 73, consisting of that body of remedies, procedures, and practices which theretofore had been evolved in the English Courts of Chancery."

See also Local No. 149, International Union, United Auto, Aircraft and Agr. Implement Workers v. American Brake Shoe Co., 298 F.2d 212 (4th Cir. 1962).

Carter Products, Inc. v. Colgate-Palmolive Co., 214 F.Supp. 383 (D.Md.1963), is a case that, like the present action, involved the misappropriation of a trade secret. Noting that there is no statute similar to the one in patent cases authorizing the award of attorneys' fees in "exceptional cases", the court in *Carter* stated that in trade secret cases "Any such award must be based upon the inherent power of a federal court to award attorneys' fees as costs in certain types of cases." (p. 414). The court went on to state:

"This court reaffirms its finding and conclusion that the misappropriation of plaintiffs' trade secrets by Colgate was unconscionable, willful, and in bad faith, the equivalent of fraud. Reynolds v. Whitin Machine Works, 4 Cir., 167 F.2d 78, at 87. Plaintiffs are, therefore, entitled to an allowance for reasonable attorneys' fees and disbursements incurred in connection with the trade secret issues as well as the patent issues. This does not mean that plaintiffs are entitled to recover all of their attorneys' fees and disbursements; the award must recognize any countervailing equities of Colgate * * *."

■ In my opinion, the present case is one in which the equity power of this court can and should be invoked to award reasonable attorneys' fees In the decision of the case at bar, reported

at 299 F.Supp. 202 (E.D.Wis.1969), this court found a "breach of confidence" and improper use of the plaintiff's secret. This finding of intentional wrongdoing on the part of the defendant is sufficient, under equitable principles and upon the standards outlined in the *Sprague, Cleveland* and *Carter* cases, to justify an award of attorneys' fees as part of the plaintiff's recoverable damages.

While the facts of this case do not warrant the granting of punitive damages, I find that an allowance for attorneys' fees should be made. However, it would be unfair to tax all of the plaintiff's legal expense to the defendant. An assessment of $15,000 constitutes a proper contribution to the plaintiff's legal expense and, in my opinion, is justified upon the facts in this case.

The order for judgment may also provide for 75% of the plaintiff's taxable costs, excluding all costs and fees expended by the plaintiff in connection with the proceedings before the special master. Interest is to run from the date of the judgment, with no interest being allowed prior to such date.

Plaintiff's counsel is requested to prepare an order incorporating the foregoing and to submit it for my signature, but not until 10 days after having first exhibited it to defendant's counsel.