*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD L. NELSON and BEVERLY NELSON,

Plaintiffs-Appellants,

v

CHIPPEWA OTTAWA RESOURCE AUTHORITY,
GRAND TRAVERSE BAND OF OTTAWA AND
CHIPPEWA INDIANS, BAY MILLS INDIAN
COMMUNITY, and SAULT STE. MARIE TRIBE
OF CHIPPEWA INDIANS,

Defendants-Appellees.

UNPUBLISHED
January 25, 2024

No. 363660
Mackinac Circuit Court
LC No. 20-008508-CH

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

Plaintiffs appeal as of right the circuit court's order dismissing their action to quiet title against defendants on the ground that it was without jurisdiction to decide the matter because the actions and claims of the United States created a cloud on plaintiffs' title, which triggered federal preemption. See 28 USC 1346(f) and 28 USC 2409a. We affirm.

## I. FACTS

A July 11, 2012 memorandum and order resulting from earlier litigation brought by plaintiffs against defendants and other parties in the federal district court includes the following summary of the pertinent facts underlying this case:

> Plaintiffs are the owners of real property that they purchased from defendants Duane L. Renner and Mary Louise Renner (collectively, "the Renners") as co-trustees of the Renner Family Living Trust. A warranty deed was executed on September 12, 2003, that transferred the property from the Renners to Plaintiffs. Plaintiffs allege that defendant John Griffin, the Renner's [sic] real estate agent, provided Plaintiffs with a copy of a survey which he represented as the legal description and boundaries of the property warranted in the warranty deed, and that he showed Plaintiffs boundary stakes and hand-traced in black marker the property

-1-

that Plaintiffs were being sold. The parties do not dispute that the Chippewa Ottawa Resource Authority (CORA) occupies property adjacent to this property on the north side on behalf of the Bay Mills Indian Community, the Grand Traverse Band of Ottawa and Chippewa Indians, and the Sault Ste. Marie Tribe of Chippewa Indians.

[Plaintiffs alleged] that, unknown to them but known to Griffin and CORA, Edwin D. Dutcher and Sandra Dutcher had executed a quit claim deed to CORA on March 7, 2000 that conveyed a portion of the property warranted to Plaintiffs by the Renners. Plaintiffs also allege that, unknown to them but known to Griffin and CORA, James A. Hamel and Jodi Hamel had executed a quit claim deed to CORA on April 5, 2000 that conveyed a portion of the property warranted to Plaintiffs by the Renners. Plaintiffs allege that those quit claim deeds were recorded by CORA with the Mackinac County Register of Deeds on or about August 17, 2005.

\* \* \*

[Regarding] who owns the adjacent property occupied by CORA, the United States and Plaintiffs agree that the United States owns the property in trust for the Bay Mills Indian Community, the Grand Traverse Band of Ottawa and Chippewa Indians, and the Sault Ste. Marie Tribe of Chippewa Indians. [*Nelson v Renner*, opinion of the United States District Court for the Western District of Michigan, issued July 11, 2012 (Case No. 2:11-cv-00440-RJJ), pp 2-3 (record citations omitted).]

The Office of the Field Solicitor of the United States Department of the Interior sent a letter to plaintiffs, dated September 19, 2007, "regarding the correct location of the property lines for property formerly known as the Hamel and Dutcher Tract, title to which is currently held by the United States for the benefit of the Sault Ste. Marie Tribe, Bay Mills Indian Community and the Grand Traverse band of Ottawa and Chippewa Indians," as "acquired in trust by the United States by a conveyance from the Tribes executed on May 18, 1995." The letter additionally described plaintiffs' acquisition of a tract from the Renners on September 12, 2003, which "is located immediately south of the tract held by the United States." The letter further reported that various surveys indicated that "the distance calls in the deeds of conveyance to your property and to the property held by the United States do not match the survey monuments and the occupied property lines." The letter concluded as follows:

It is the position of the United States that CORA is correctly within the boundaries of the tract of land acquired from Dutcher and Hamel and you are hereby requested to cease your efforts to prevent Tribal access to the CORA tract or to try to possess any part of the tract occupied by CORA. You are also hereby advised that the United States has not waived its sovereign immunity to a quiet title action which seeks to quiet title to lands held by the United States for Indians. . . .

In their brief on appeal, plaintiffs explain that "[t]he property described in the 2003 deed to [plaintiffs], the property described in the 1995 deed to the United States from Defendants, and

the property described in the deeds recorded in 2005 by Defendants all include overlapping property descriptions, creating a title conflict with respect to a portion of [plaintiffs'] property."

Plaintiffs previously filed an action in the Mackinac Circuit Court in 2009 in LC No. 09-006774-CH. This Court's decision resolving an appeal in that case summarized some additional relevant procedural history:

> In their amended complaint [in the Mackinac Circuit Court], plaintiffs alleged: breach of contract by the Renners; fraudulent misrepresentation by the Renners; innocent misrepresentation by the Renners; silent fraud by the Renners; fraudulent misrepresentation by Griffin; innocent misrepresentation by Griffin; declaratory relief; slander of title; and trespass.
>
> The United States was added to the case and had the matter removed to federal court, which dismissed the action, finding that the United States had not waived sovereign immunity in cases challenging its title to trust or restricted Indian lands.[1] The federal court remanded the matter to the circuit court for further proceedings regarding plaintiffs' remaining claims against the other parties. After six years and numerous motions, the trial court ultimately granted CORA summary disposition [and so dismissed CORA with prejudice] and, in exasperation, dismissed the remaining claims without prejudice. [*Nelson v Renner*, unpublished per curiam opinion of the Court of Appeals, issued October 12, 2017 (Docket No. 332948), p 2 (citation omitted).]

This Court reversed on the ground that the trial court dismissed the case without any legal basis for doing so, noting that "[a]ny discussion on our part regarding the merits of the pending motions would be inappropriate," and remanded the case to the trial court "with instructions that the court consider the merits of the various motions that were pending at the time it dismissed plaintiffs' case without prejudice." *Id.* at 3.

The next action in this Court was the dismissal of CORA's complaint for superintending control, in which CORA asserted that further litigation in the circuit court was precluded by earlier litigation. See *In re Chippewa Ottawa Resource Auth*, unpublished order of the Court of Appeals, entered February 26, 2019 (Docket No. 345405).

Litigation resumed in the federal district court in 2019, apparently in response to some advocacy from the United States. The district court explained:

> Plaintiffs originally sued in State Court to quiet title and for other relief. The United States removed the case to this Court on November 9, 2011. On July 11, 2012, this Court entered a Memorandum Opinion and Order dismissing all claims against the United States based on lack of subject matter jurisdiction. In particular, the Court found that the United States, as trustee, had sovereign immunity from all claims

---

[1] See *Nelson* (Case No. 2:11-cv-00440-RJJ) at 8.

against it in the case, including the Plaintiffs' effort to quiet title to the land in their favor. The Court dismissed the claims "with prejudice" and remanded the balance of the case to the State Court.

Litigation evidently continued for years in the State system and is apparently still not entirely resolved. What brings the matter before this Court again is the government's motion, filed July 1, 2019, "To Enforce this Court's Memorandum and Order and Prohibit Interference with Federal Trust Property." [*Nelson v United States*, order of the United States District Court for the Western District of Michigan, entered July 3, 2019 (Case No. 2:11-cv-440), p ___; 2019 WL 13213932 at *1.]

The federal court declined to grant the relief the United States requested, on the ground that it had earlier concluded that it did not have jurisdiction to decide claims against the United States in the first instance, but stated:

[Any] order of the State Court accepting the Plaintiffs' view of the merits of the property dispute is as ineffective against the trust rights of the United States as would be this Court's own order making the same finding. Neither this Court nor the State Court has any power at this point to do anything that impairs the trust rights of the United States. And that, as a practical matter, means the interests of the tribes, as beneficiaries of the United States trust title, cannot be impaired by . . . State Court order either. So whatever action Plaintiffs choose to take on the disputed property is at their peril, . . . because no Court has yet acquired the jurisdiction necessary to impair the position of the United States. [*Id.* at ___; 2019 WL 13213932 at *2.]

On April 2, 2020, the Mackinac Circuit Court issued an order dismissing the case, explaining:

The Court, on its own motion, DISMISSES the matter WITHOUT PREJUDICE and holds any pending matters before the Court in abeyance. The Court[] finds the introduction of federal parties, specifically the United States Department of Interior, by letter received February 6, 2020, and in particular, the Federal District Court ruling of July 3, 2019, that the District Court's conclusions that the most logical and legally entitled entity to ultimately resolve the matters pending are the Federal Courts or their related departments.

This Court does not dismiss the matter with prejudice, as the Court finds that if any future action reveals a flawed title, legal description or otherwise, which may render the transfer of land held in trust for the Tribes a nullity or void *ab initio*, the matter may necessarily be back before this Court.

On November 5, 2020, plaintiffs commenced the instant action, and pointedly did not name the United States as a defendant. Count I of their first amended complaint asked the court to quiet

title in their favor with respect to "a portion of that property purchased from the Renner Trust under the September 12, 2003 Warranty Deed," Count II sought termination of a May 13, 2003 agreement between the Department of Environmental Quality and CORA "granting CORA the right to construct and maintain a boat launch ramp and dock on Lake Huron Bottom land adjacent to the Subject Property," Count III sought damages in trespass, and Count IV asserted that "Defendants' agents have come on to Plaintiffs' property and damaged Plaintiffs' fixtures and personal property," "destroyed fencing plaintiffs installed on their property," "damaged Plaintiffs' dock by ramming the dock with their boats," and "removed two of Plaintiffs' boats from their property," and sought attendant damages.

The trial court, while showing reluctance to see this case come back to life, noted that plaintiffs were now endeavoring to avoid making claim on land to which the United States asserted an interest, and explained:

> All parties to this case know the background of this case better than what this Court does. Tribal Defendants, which include CORA, Sault Tribe, Bay Mills, and Grand Traverse, each filed motions for summary disposition arguing sovereign immunity and/or res judicata.

> The same parties were involved in litigation in this court in Mackinac County File No. 2009-6744-CH, which was dismissed in April 2020. Plaintiffs brought this current action based on almost identical facts and circumstances. Plaintiffs' new counsel disguised this case by dressing it up in new clothes and giving it a makeover. This was done in an attempt to make chicken soup out of chicken feathers.

> Plaintiffs claim this new suit is different because it does not include property held in trust by the United States. Every party to this case knows if the United States is determined to be a necessary party then the case is going nowhere in state court. During the twelve years of this litigation the United States has refused to get involved. Every party wishes the United States would get involved, but the Court is not here to judge the wisdom of the Federal Government.

> So, Plaintiffs brought this action to quiet title to property that is not held in trust by the United States. Plaintiffs make a valid point when it sets aside the legal description that was conveyed to the United States. It seeks to quiet title to property that has a legal description that was not conveyed to the United States. Plaintiffs claim that the legal description was in fact conveyed to them, and that the Tribal Defendants are trespassing on it. When the case is framed like that it puts a new "coat of paint" on it. . . .

> [T]he Court, in its simplest way agrees with Plaintiffs' position in this case. If this case does not include property that is in trust, then the Tribal Defendants do not enjoy sovereign immunity. This is fully explained in Plaintiffs' brief, and the Court adopts that position, particularly with the passage . . . that quotes Chief

Justice Roberts in the *Upper Skagit*[2] case. The Tribal Defendants would argue that all the property in dispute is held in trust by the United States. The Court believes it was the intent of the Tribal Defendants' to convey any property it owned to be held in trust by the United States. But it appears from the legal descriptions that did not occur. Further, at this stage the Court must consider all evidence in [the] light most favorable to the nonmoving party. Plaintiffs have established, at least on the face of the pleadings, that this property in dispute is not held in trust by the United States.

The Court also finds that res judicata does not apply in this case. The previous case was not decided on the merits. The case was dismissed for lack of a necessary party.

The court further held, however, that, "[s]ince the Court has determined this is a new case, with different property, the statute of limitations has run out" with respect to the tort claims against the nontribal defendants, and dismissed them on that basis, thus leaving only the present tribal entities.

Four months later, the trial court provided an update:

In a previous opinion, this Court ruled that it had jurisdiction over property owned by the tribal entities, within the state of Michigan, that is not held in trust by the United States. The court relied on the "immovable property exception" and Chief Justice Roberts' concurrence in the *Upper Skagit* case. The Court did not fully decide the previous motion brought by the Tribes, as it ignored the arguments regarding the counts III-VII, which are grounded in tort. . . . The Court considers the motion for summary disposition in this opinion, as well as the Tribes' renewed motion for summary disposition on counts I and II.

The court dismissed Counts III and IV on the grounds that "[i]t is established law that Indian Tribes are immune from unconsented suit unless abrogated by Congress," that "[t]here is no congressional authorization to bring this current suit in state court," and that "[t]here is no evidence that the Tribes have consented or waived its sovereign immunity." However, the court, applying the immovable-property doctrine, declined to dismiss Counts I and II. The court explained:

[W]hat are [plaintiffs] to do in this case? Continue to bang their heads against the wall like they have for the past twelve years of litigation? The Tribes would say yes.

---

2 In *Upper Skagit Indian Tribe v Lundgren*, ___ US ___, ___; 138 S Ct 1649, 1653; 200 L Ed 2d 931 (2018), the United States Supreme Court noted that, under the immovable-property rule, "sovereigns enjoyed no immunity from actions involving immovable property located in the territory of another sovereign."

. . . A more in-depth analysis has opened this Court's eyes to the predicament this Court and litigants are in. . . . [L]ower court's [sic] do not have binding precedent to apply to this very question.

. . . Although there is no binding precedent to follow, the Court finds sufficient persuasive material to apply the immovable property exception in this case.

A year later, however, the court saw things differently. Its memorandum and decision closing this case begins, "Collectively the Defendants bring this motion, making the same argument. The sole issue to decide is whether the United States actions and claims create a cloud on Plaintiffs title. If the answer is 'yes' then the case must be dismissed." The court continued that "a cloud on title is a low bar," such that "[a]ll that is necessary is a reasonable awareness that the Government claims some interest adverse to the Plaintiffs," and added that "[a] cloud upon title can be merely an apparent defect and if it has a tendency, even in the slightest degree, to cast doubt upon the owner's title, and to stand in the way of full and free exercise of ownership." The court then explained:

Previous motions the Court only had the complaint to consider, but now has Defendants' answer to the complaint . . . . Plaintiffs complaint alleges that a particular piece was not deeded into trust, and hence, the United States does not have an interest or created a cloud on title.

The Court reviewed the pleadings, which now includes the answer. It paid particular attention to Exhibits 3[3] and 4 of that answer.[4] The Court is unsure if it had previously reviewed those documents (perhaps when it reviewed the 2009 file) and did not pay close enough attention to them. Those documents gave the Court a better understanding of the history of the dispute, and the claims of the United States. Exhibit 3 clearly shows the United States believes it holds the disputed property in trust for the benefit of [defendants]. That exhibit was addressed directly to Plaintiffs in this case. That exhibit, in itself, shows the United States has a claim which creates a cloud on Plaintiffs title.

The court thus granted defendants' motion to dismiss, and closed the case. This appeal followed.

---

[3] This reference is to the September 19, 2007 letter from the federal Department of the Interior to plaintiffs as described earlier.

[4] This is a reference to a "Memorandum from the Chief Cadastral Surveyor, Bureau of Land Management, Eastern States Office, to the [Bureau of Indian Affairs] Midwest Regional Director dated March 9, 2011," which recognized plaintiffs' parcel as adjoining the McKay Bay Trust Parcel to the latter's south, and, as did the September 19, 2007 letter, described some discrepancies between monumented and occupation lines and deed descriptions.

## II. ANALYSIS

Plaintiffs argue that the trial court erred by dismissing their claims on the basis of federal preemption. We disagree.

"Our review of the legal question of whether a federal law preempts state action is de novo, as it is with the interpretation of statutes, and with the general question of whether a court has subject-matter jurisdiction." *In re Guardianship of Bazakis*, 342 Mich App 144, 150; 992 NW2d 673 (2022) (citations omitted). Whether a trial court properly dismissed a case for failure to join a necessary party is also a question that we review de novo. See *Mather Investors, LLC v Larson*, 271 Mich App 254, 256; 720 NW2d 575 (2006).

Under MCL 600.751, "[t]he courts of record of this state shall have jurisdiction over land situated within the state whether or not the persons owning or claiming interests therein are subject to the jurisdiction of the courts of this state." MCL 600.2932(1) similarly provides:

Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

However, "[t]he United States enjoys sovereign immunity from unconsented suits. Thus, absent a congressional waiver, this sovereign immunity shields the United States government and its agencies. Sovereign immunity is a threshold ground for denying audience to a case against the United States on the merits." 32A Am Jur 2d, Federal Courts, § 895, p 344. "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v Mottaz*, 476 US 834, 841; 106 S Ct 2224; 90 L Ed 2d 841 (1986).

An exception to the sovereign immunity of the United States is set forth in 28 USC 2409a(a), which provides:

The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. *This section does not apply to trust or restricted Indian lands* .... [Emphasis added.]

An exception to the exception, which preserves the sovereign immunity of the United States, thus arises when a dispute concerns "trust or restricted Indian lands." Immunity then applies regardless of the merits of the United States' claim to title. *Wildman v United States*, 827 F2d 1306, 1309 (CA 9, 1987) ("the very purpose of the doctrine is to prevent a judicial examination of the merits of the government's position").

On appeal, plaintiffs concede that "a property owner can only bring a quiet title claim against the United States under the Federal Quiet Title Act, 28 USC 2409a, a statutory exception

to the United States' sovereign immunity." Plaintiffs further concede that "if the United States is a necessary party to this action, [plaintiffs] have no avenue for seeking relief in any court against these Defendants." Plaintiffs nevertheless argue that they are instead challenging defendants' claimed interest in the subject property as separate and distinct from any interest the United States holds in trust for defendants. On that note, plaintiffs cite MCR 3.411(B)(2), which sets forth the requirements for a complaint commencing a civil action to determine interests in land. They note that it does not expressly require that all interested landholders be brought into the action. Plaintiffs thus argue that the rule "assumes that there may be other persons who have claims to the property that are not named as a party to the action." Also instructive, however, is MCL 560.224a, which concerns actions to vacate, correct, or revise a recorded plat. MCL 560.224a *does* require that certain fellow lot owners, utilities, and governmental officials be made parties to the litigation.

With regard to parties necessary to litigation, MCR 2.205(A) states that "persons having such interests in the subject matter of an action that their presence in the action is *essential* to permit the court to render complete relief must be made parties and aligned as plaintiffs or defendants in accordance with their respective interests." (Emphasis added). MCR 2.205(B) in turn states that "[i]f jurisdiction over those persons can be acquired only by their consent or voluntary appearance, the court may proceed with the action and grant appropriate relief to persons who are parties to prevent a failure of justice." MCR 2.205 thus calls for bringing into litigation persons known to have an interest in its outcome, but also authorizes litigating without necessary parties over whom the court may not exercise jurisdiction to the extent that justice so requires.

Taking all of these disparate court rules and statutes into account, we hold that, in the present situation, the United States is a necessary party over whom the Mackinac Circuit Court has not been able to exercise jurisdiction. Indeed, it appears there is no way to force the United States to get involved in this case, and at most, all the United States has ever said on this matter is that it has not waived its sovereign immunity. Even so, plaintiffs argue that because the United States has at least a tangential interest in their land, requiring their involvement in any quiet-title litigation would leave plaintiffs defenseless in the face of encroachments by a nontribal neighbor, a person filing a fraudulent lien on the property, or even a squatter. Plaintiffs note that the Chief Justice of the United States Supreme Court has recognized problems of that sort in connection with tribal immunity, and has suggested that the immovable-property rule might offer a solution. See *Upper Skagit Indian Tribe v Lundgren*, ___ US ___, ___; 138 S Ct 1649, 1655; 200 L Ed 2d 931 (2018) (ROBERTS, C.J., joined by KENNEDY, J., concurring). Plaintiffs impliedly encourage this Court to adopt that reasoning and allow this case to proceed on that basis.[5]

In *Upper Skagit Indian Tribe*, property owners brought a quiet-title action against a Native American tribe. They asserted ownership of adjacent land that they claimed to have acquired through adverse possession before the original owner sold said property to the tribe. The tribe asserted sovereign immunity, but the Washington Supreme Court, citing *Yakima Co v Confederated Tribes & Bands of Yakima Indian Nation*, 502 US 251, 255; 112 S Ct 683; 116 L Ed 2d 687 (1992), held that "[a] court exercising in rem jurisdiction is not necessarily deprived of its

---

[5] Indeed, the trial court in this case briefly recognized the immovable-property rule as an avenue for entertaining plaintiffs' in rem claims against the tribal defendants.

jurisdiction by a tribe's assertion of sovereign immunity." *Lundgren v Upper Skagit Indian Tribe*, 187 Wash 2d 857, 865-866; 389 P3d 569 (2017). The United States Supreme Court held that the Washington court misconstrued *Yakima Co*, and cautioned that "immunity doctrines lifted from other contexts do not always neatly apply to Indian tribes," noting that the "immunity possessed by Indian tribes is not coextensive with that of the States." *Upper Skagit*, ___ US at ___; 138 S Ct at 1654 (quotation marks and citation omitted). It then remanded the case to the Washington Supreme Court. *Id*.[6]

Plaintiffs argue that the instant case aligns with *Upper Skagit*, as concerns the legal status of the land in issue. Generally, the United States Secretary of the Interior is authorized by 25 USC 5108 to "acquire . . . any interest in lands, . . . within or without existing reservations, including trust or otherwise restricted allotments, . . . for the purpose of providing land for Indians." The statute further provides that "[t]itle to any lands or rights [thus] acquired . . . shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired . . . ." Plaintiffs argue that this case does not concern property purchased and placed into trust with the United States, and that it instead concerns property purchased on the open market, which thus is not sovereign tribal land subject to the immunity of the tribal defendants or the United States. Application of this exception to sovereign immunity, however, would require determining whether the land in question was indeed a tribal acquisition on the open market not placed into trust with the United States. And when there is any question with regard to the latter, the United States is a necessary party. See *Shade v Downing*, 333 US 586, 588-589; 68 S Ct 702; 92 L Ed 894 (1948) ("we held . . . that the United States was a necessary party to the partition proceedings, even absent a statutory requirement to that effect"). Thus, it would appear that plaintiffs' claim here can go no further. MCR 2.205(B), which generally allows for actions to proceed without the participation of necessary parties over whom the court cannot exercise jurisdiction, is of no help to plaintiffs. This is so because under 28 USC 1346(f), "[t]he [federal] district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."

Furthermore, as the trial court acknowledged, the bar for recognizing the United States' interest in land for purposes of federal preemption is a low one. Any "colorable claim" that the United States holds the lands in question in trust for a Native American tribe triggers the reservation of sovereign immunity under 28 USC 2409a(a) for "trust or restricted Indian lands." *Wildman*, 827 F2d at 1309. "To the extent that [28 USC 2409a(a)] allows any inquiry on the merits, that inquiry can extend no further than a determination that the [United States] government had some rationale for its claim" that was "not undertaken in either an arbitrary or frivolous manner." *Alaska v Babbitt*, 38 F3d 1068, 1076 (CA 9, 1994). A "state-law complaint that alleges a present right to possession of Indian tribal lands necessarily 'asserts a present right to possession under federal law,' and is thus completely preempted and arises under federal law." *Caterpillar*

---

[6] *Upper Skagit* apparently engendered no further subsequent history, and thus, in the end, the Washington Supreme Court did not decide whether the immovable-property rule operates as an exception to the sovereign immunity of Native American tribes.

-10-

*Inc v Williams*, 482 US 386, 393 n 8; 107 S Ct 2425; 96 L Ed 2d 318 (1987), quoting *Oneida Indian Nation v Oneida Co*, 414 US 661, 675; 94 S Ct 772; 39 L Ed 2d 73 (1974).

As noted, plaintiffs acknowledge that the various conveyances attendant to the subject property have resulted in "overlapping property descriptions, creating a title conflict with respect to a portion of [plaintiffs'] property." But by again resorting to the device of not naming the United States as a defendant, while insisting that they are not challenging any interests the United States may have, plaintiffs seem to be arguing for some kind of fictional partition of the property for purposes of this litigation. In doing so, they seek to partition the property such that there is no portion to which the United States might have a claim. But plaintiffs cite no authority for the proposition that a court entertaining a quiet-title action may resort to such fictional partitioning. Moreover, any attempt to determine precisely where to draw lines separating land to which the United States may have a claim, from land to which the United States asserts no rights, would still necessarily implicate the United States' interest. Although the United States claims neither an interest in the totality of the subject property, nor complete identity of interest with defendants, in light of the overlapping descriptions involved, its claim to *some* of the land constitutes a cloud on title implicating *all*.

In some of the litigation preceding this case, the federal district court stated as follows:

[I]t is of no consequence that Plaintiffs have named CORA, rather than the United States, as being the party with whom they have a property dispute. The parties do not dispute that the United States has been added as a necessary party due to its status as the owner of the adjacent land occupied by CORA. It is clear that any claims that can be attributed to the United States due to its ownership of the adjacent property occupied by CORA are claims for quiet title.

The Court notes that Plaintiffs have provided evidence concerning the issue of title on the disputed property in this case. However, it is not up to this Court to resolve that issue. The United States's immunity applies whether its claim to title is right or wrong. As long as the United States has a "colorable claim" to title, the Indian trust land exception to [28 USC 2409a(a)] applies. In its motion to dismiss, the United States presents evidence of a colorable claim by attaching a deed executed on May 18, 1995, that conveys the property to the United States in trust for the Sault Ste. Marie Tribe of Chippewa Indians, Bay Mills Indian Community, and Grand Traverse Band of Ottawa and Chippewa Indians. The United States also attaches a final title opinion from the United States Department of the Interior dated March 15, 1996, that confirms the execution, approval, and recording of that deed, and a letter from the United States Department of the Interior to Plaintiffs that details the United States's rationale as to its title claim. The Court finds this evidence to be more than sufficient to establish a colorable claim to title. [*Nelson* (Case No. 2:11-cv-00440-RJJ), pp 6-7 (record citations omitted), citing *Iowa Tribe of Kansas and Nebraska v Salazar*, 607 F3d 1225 (CA 10, 2010) (declining to exercise jurisdiction over a dispute concerning whether the Secretary of the Interior properly took a small tract of land into trust on behalf of a Native American tribe); *Alaska v Babbitt*, 38 F3d at 1076 ("To the extent that the [quiet-title act] allows any inquiry on the merits, that inquiry can extend no further than a determination that

the [United States] government had some rationale for its claim."); *Wildman*, 827 F2d at 1309 (CA 9, 1987) (conditions to legislation waiving the sovereign immunity of the United States must be strictly observed with exceptions not lightly implied).]

It is instructive that, in *Upper Skagit*, ___ US at ___; 138 S Ct at 1652, the United States Supreme Court attached some significance to the plaintiff tribe's purchase of the subject property "with an eye to asking the federal government to take the land into trust and add it to the existing reservation next door," without expressing concern over whether the tribe had actually done so. Similarly, in this case, the trial court observed that "it was the intent of the Tribal Defendants' to convey any property it owned to be held in trust by the United States," but that "it appears from the legal descriptions that did not occur."

The trial court attached great significance to the September 19, 2007 letter from the Interior Departments' Office of the Solicitor to plaintiffs, and impliedly apologized for failing to afford that document greater scrutiny earlier. As noted, that letter acknowledged plaintiffs' 2003 acquisition of a tract "located immediately south of the tract held by the United States," and noted that various surveys indicated that "the distance calls in the deeds of conveyance to your property and to the property held by the United States do not match the survey monuments and the occupied property lines." It announced that it was the position of the United States that CORA was "correctly" operating within the boundaries it claimed, admonished plaintiffs to cease trying to "prevent Tribal access to the CORA tract or to try to possess any part of the tract occupied by CORA," and reminded plaintiffs that "the United States has not waived its sovereign immunity to a quiet title action which seeks to quiet title to lands held by the United States for Indians," citing 28 USC 2409a(a).

The letter also recounted some of the pertinent controversies and issues:

Correspondence in the file provided by the [Bureau of Indian Affairs] shows that in response to a notice by CORA that you could not moor at the CORA dock, by letter dated July 17, 2005 you advised that the dock was within boundaries of property owned by you citing a Bischer survey dated June 19, 1992. By letter dated July 18, 2005 CORA notified you that because the dock had been moved the 1992 survey was no longer accurate and provided you with a copy of the 1999 survey as well as the permit for the dock from the Michigan Department of Environmental Quality (DEQ). The file indicates that you had your property surveyed on or about December 2, 2005 by Great Lakes Land Surveying (GLLS). The notes on the GLLS survey indicate that a discrepancy exists between the monumented and occupied lot lines and the deed lines and recommends that an attorney be consulted. By letter dated November 7, 2006 you advised CORA that you were proceeding with building permits and offered to purchase the CORA property, or sell your property to CORA. CORA advised you by letter dated March 22, 2007 that title to the property it occupies is held by the United States and suggested that you contact the BIA regarding the matter. By letter dated April 12, 2007 CORA referred the matter to the attention of the BIA.

It appears from the 1994 Bischer Survey, 1999 Meridian Survey, and the 2005 Great Lakes Land Surveying Survey that the distance calls in the deeds of conveyance to your property and to the property held by the United States do not match the survey monuments and the occupied property lines. The deed from the Tribes to the United States acknowledges this by noting the measured distance and the recorded distance. The 1994 deed to the United States also however, makes the distance call to the adjoining property lines. The deed to the United States places the north boundary at "the South line of a lot described as the North 225 feet of said Lot 6" and "along the North line of Boezwinkle/Renner property." A call to an adjoiner will supercede a call for a unit of linear measure. It is also accepted property law that a retracement survey may not set new corners, new lines, or even correct the errors of the original surveyor, and that where there are inconsistencies between older and newer surveys, the older survey prevails. Thus, the GLLS survey may not be relied upon to relocate settled and occupied property lines. The doctrine of repose requires that settled boundaries shall not be disturbed. This is particularly true in circumstances such as these where the adjustment of boundaries lines of one tract would disturb the boundary lines of several tracts. Both the 1994 and 1999 surveys note that the lines are placed where actually occupied, both surveys predate your ownership of the adjoining tract, and no dispute regarding property lines existed prior to your acquisition of the Renner tract. Owners who purchase property with an established boundary are bound by it. . . .

Neither the law nor the facts support your assertions regarding the location of the property boundaries.

Again, the Mackinac Circuit Court was satisfied that this letter "clearly shows the United States believes it holds the disputed property in trust for the benefit of the Defendants," and this "shows the United States has a claim which creates a cloud on Plaintiffs title."

Plaintiffs offer no direct challenge to the letter's descriptions of conflicting boundaries or of the United States' interest in the matter, or to the trial court's conclusion that the 2007 letter "clearly shows the United States believes it holds the disputed property in trust for the benefit of the Defendants," and thus that "the United States has a claim which creates a cloud on Plaintiffs title." In light of these undisputed facts, under 28 USC 1346(f), if the immovable-property doctrine offers an avenue for overriding defendants' sovereign immunity, given the United States' overlapping interests, the exclusive forum for adjudicating the matter remains the federal district court.[7] See *Second Nat'l Bank & Trust Co v Reid*, 304 Mich 376, 392; 8 NW2d 104 (1943) (acknowledging a federal case in which "the State court had no jurisdiction when the subject matter was one that originally could only have been brought in the Federal court and not even in that case

---

[7] We need not concern ourselves with whether plaintiffs would have any success returning to federal court with their current theories of fictional partition or application of the immovable-property doctrine, including whether a federal tribunal would apply the doctrine of res judicata to preclude such advocacy on the ground that it was, or could have been, raised in earlier litigation.

without joining the United States as a necessary party after receiving its consent to the suit"), citing *Lambert Run Coal Co v Baltimore & Ohio R Co*, 258 US 377; 42 S Ct 349; 66 L Ed 671 (1922).

In its responsive brief on appeal, the Sault Tribe persuasively suggests that there is some circularity in plaintiffs' reasoning, stating that plaintiffs "argue that because they make a conclusory assertion that if a court were to *interpret the federal trust ownership deeds and other land records the same as* [plaintiffs] *do (and contrary to the Tribes and the United States' interpretations)*, then the court would conclude that 'the United States has no interest, equitable, legal, or otherwise,' in the Lake Huron Trust Property." We agree that dispositive here is not plaintiffs' representations concerning the limits of, or boundaries delineating, the United States' claims on the parcels at issue, but rather that those limits or boundaries must themselves be determined in the first instance.

The trial court correctly recognized that the United States has sufficient interest in the subject property to constitute a cloud on plaintiffs' title, and thus that the United States is a necessary party to any related litigation. Further, the United States district court is the exclusive forum for deciding quiet-title claims involving the United States. Accordingly, the trial court correctly dismissed this case.

Affirmed.

/s/ Michelle M. Rick
/s/ Noah P. Hood